UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

BETTY TINKER & RICHARD TINKER, )
    Plaintiff(s); )
     )
-vs.- )     No. CV 96-P-1171-S
     )
WAL-MART STORES, INC. ET AL, )
    Defendant(s). )

## OPINION

Based on the following reasons, the Defendant's Motion for Summary Judgment is hereby GRANTED.

### Facts[1]

At approximately 6:30 p.m. on August 10, 1994, the Plaintiff Betty Tinker ("Tinker") was shopping in the Defendant Wal-Mart Store ("Wal-Mart"). On her way to the restroom, she walked through the Sporting Goods Department where she slipped and fell on some clear liquid which was on the floor in the aisle. Tinker did not have any difficulty seeing down the aisle and she did not see the liquid on the floor as she walked down the aisle. There were no footprints, streaks or marks through the liquid. There was no discoloration on the floor from the liquid. The liquid had a strong odor. Tinker did not see any employees in the aisle. After Tinker fell, a bottle of StarBrite waterproofing was found upright on the floor with its cap off. An unidentified Wal-Mart employee appeared after Tinker fell and helped her to the Layaway Department.

Wal-Mart employee Robert Graves ("Graves") was working in the Sporting Goods Department at the time. Graves was the only employee working in the department that evening.

---

1. The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the Plaintiff.

He zoned[2] the area five to ten minutes before he was told that a customer had fallen down in the aisle. At the time Tinker fell, Graves was assisting another customer on a different aisle. Graves did not see the liquid or the bottle on the floor when he zoned the aisle. Graves was not told about the liquid on the floor prior to Tinker's fall.

Tinker filed a complaint alleging negligence and wantonness and Richard Tinker, Betty Tinker's husband, has claimed loss of consortium. Wal-Mart has filed a motion for summary judgment.

## Analysis

Under Alabama case law, a storekeeper is not the insurer of the customer's safety but rather is under a duty to exercise reasonable care to provide and maintain reasonably safe premises. *Maddox v. K-Mart Corp.*, 565 So. 2d 14 (Ala. 1990). No presumption of negligence arises from the mere fact of the injury. *Cash v. Winn-Dixie Montgomery, Inc.*, 418 So. 2d 874 (Ala. 1982). The plaintiff must show that the storekeeper or his agent had actual or constructive knowledge of the substance which caused the fall before the storekeeper can be held liable. *Id.*

The thrust of Wal-Mart's argument on summary judgment is that Tinker has produced insufficient evidence that Wal-Mart had actual or constructive knowledge of the substance on the floor. Wal-Mart has produced the testimony of Graves who stated that he zoned the area a short time before Tinker slipped and that he saw no substance on the floor and no bottle on the floor at that time. By her own testimony, Tinker states that she did not see the substance on the floor until she slipped and she saw no signs of other people having walked through it. The substance had not discolored the floor. Although she saw a shopping cart with merchandise in it, Tinker

---

2. Graves testified that zoning the area included walking through the department checking that the aisles were clear and that the merchandise was straight.

2

did not see any Wal-Mart employees in the aisle. Tinker does not know how long the substance had been on the floor.

In opposition to Wal-Mart's Motion for Summary Judgment, Tinker argues that Wal-Mart had constructive notice[3] of the substance because the spill was about two and half feet wide and the substance had a strong odor. Tinker produced no other evidence as to how long the spill was on the floor. Although Tinker argues that Graves' testimony as to the sequence of events is questionable, she produces no evidence that he zoned the area improperly. In essence, Tinker argues that the time frame is too short for Graves to have zoned his area properly and that, therefore, he must have zoned it negligently.[4] However, Tinker produces no evidence of this. In addition, although she admits that she saw no Wal-Mart employee in the aisle, Tinker argues that the presence of the shopping cart might indicate that an employee was in the area. Presumably, this 'other' employee should have seen the liquid on the floor.

Wal-Mart has produced sufficient evidence that the area had been inspected prior to Tinker's fall and that the substance had not been discovered. Tinker has produced no evidence that Wal-Mart had actual knowledge. Arguably, Tinker has produced a scintilla of evidence that Wal-Mart might have had constructive notice of the spill. Tinker's argument that the mere size and odor of the spill are sufficient to impart constructive notice to Wal-Mart, however, do not rise to the level of substantial evidence required under the summary judgment standard. Tinker admits that, despite the size of the spill, she did not see the liquid until she slipped. While she also states that the substance had a strong odor, she does not state that she smelled it before slipping in it.

---

3. In her brief, Tinker does not seem to allege that Wal-Mart had actual notice of the spill. No evidence had been introduced which indicates that Wal-Mart had actual notice of the spill. Therefore, the Court limits its discussion to constructive notice.

4. Although his deposition testimony is a little unclear about exactly how much time elapsed between zoning the department and when he found out that Tinker had fallen, the Affidavit submitted by Graves in support of the Motion for Summary Judgment is more explicit as to exactly how much time passed. Graves states that it was five to ten minutes between the time he walked down that aisle and the time he was notified of Tinker's fall.

Graves also testified that he did not smell the odor prior to the time Tinker fell. The fact that the spill was two and a half feet wide and had a strong odor are not inconsistent with Graves' testimony that he zoned the area five to ten minutes before Tinker slipped. If the spill was not on the floor, he would neither have seen nor smelled it. Tinker admits that there were no signs that the spill had been on the floor for any length of time. There were no streaks or marks to indicate someone else had walked through it. The floor was not discolored. There is no evidence that the substance was drying or sticky or had some other characteristic which might indicate that it had been on the floor for longer than the five or ten minutes between Graves' inspection and Tinker's fall. Without some evidence that the spill had been on the floor long enough for an employee to discover or evidence that an employee was standing in the aisle and should have seen the spill, Tinker has not met her burden of producing substantial evidence that a genuine issue of material fact remains as to Wal-Mart's constructive notice of the spill. Therefore, Wal-Mart's Motion for Summary Judgment is due to be granted.

Because Richard Tinker's claims are derivative of Betty Tinker's claims, Wal-Mart's Motion for Summary Judgment as to his claims is also due to be granted.

Dated: 3-5-97

Chief Judge Sam C. Pointer, Jr.

Service List:
 Mr. Gary D. Hooper
 Ms. Marda W. Sydnor
 Ms. Dorothy A. Powell